## POOL v. CALLAHAN.

1. A juror who is sometimes known as W. W. Bradley and sometimes
as W. M. Bradley, and who writes his name sometimes one way

and sometimes the other, may be described in the jury-list by either name, it not appearing that his true name partakes more of one form than of the other, and there being affirmative evidence tending to show that he was the identical person referred to in the jury-list, and no evidence to the contrary.

2. That a juror's name was not upon the books of the tax-receiver is no cause for new trial where the objection is not made until after verdict. *Osgood* v. *State*, 63 *Ga.* 791.

3. The evidence though conflicting warranted the verdict.

March 5, 1892.          *Judgment affirmed.*

Jurors. Practice. Evidence. Verdict. Before Judge Willis. City court of Columbus. April term, 1891.

Callahan sued Pool for $65 balance claimed to be due on a house building contract, and obtained a verdict for that amount. A new trial was denied, and Pool excepted. The grounds for new trial were, that the verdict was contrary to law and evidence; that W. W. Bradley, one of the jurors that tried the case, was not in the jury-box nor on the jury-list; and that the name of another of the jurors, M. V. Cook, did not appear upon the tax-books or list for taxes. The facts stated as to the jurors were unknown to Pool or his counsel until after the trial, as appears by their affidavits. The record also contains the affidavit of W. W. Bradley, in which he says that he was one of the jurors who tried the case, that he is sometimes known as W. W. Bradley and sometimes as W. M. Bradley, that he sometimes signs his name one way and sometimes the other, that he is the W. M. Bradley whose name is on the jury-list, that there is no other W. M. Bradley on said jury-list or in the county in his certain knowledge, and that he has been a citizen and tax-payer of the county for five or six years.

By the contract sued on, dated March 4, 1890, Callahan agreed to rebuild and finish all wood work and brick work of a house according to specifications and sketch; and Pool agreed to pay him $300 in installments as the work progressed, twenty per cent. of that amount to be

held back until the work was completed, the house to be finished by May 1, 1890; if the weather would permit. Among the specifications were, that the contractor was to do all carpenter and brick work, and the owner would lath, plaster and paint the house; the contractor was to do a good job of such materials as would be furnished him by the owner, who was to furnish all materials, and such as he furnished would be used; the contractor would use all old material from a house which was to be taken down, where it would do to put in, and remainder new; chimneys to be four feet broad up to the ceiling; and house to be finished up, good, plain, neat work. There was testimony for the plaintiff to the following effect: He had performed the work and complied with the terms of the contract. The work was finished on or about July 5, 1890, when the balance sued for became due and has not been paid. The work was not completed on the 1st of May, 1890, for the reason that plaintiff had to wait for lumber and materials which defendant was to furnish him. The mantels, base-boards and moldings should not be put in until the plastering had been done, as it made a better job done that way. There was about one week of bad weather during the progress of the work. He used all the old material of the old house in the construction of the new one that could be used, and the balance with new lumber; and the entire job was done in a good, plain, neat, substantial manner. It was impossible to make a first class job out of the old house materials, or part old and part new material. New lumber would shrink; old lumber would warp, and would not fit as closely and evenly as new lumber. The work was done as well as it could have been done with the materials furnished by the defendant. On the 5th of July, 1890, the plaintiff and defendant were at the house, and defendant examined the house and found that a lock was needed on one of the

doors. He called this to the attention of the plaintiff, who promised to have it fixed; and defendant said he was perfectly satisfied with the job, and if plaintiff would go down town with him and get the lock, he would pay him up the balance of the money for the job at once. They went together and got the lock, but defendant put off the payment to some other time. Plaintiff did not put locks in two windows and shelves in the closets until after the 5th of July, 1891; these things were not in the contract and not in the old house, but he put them in to satisfy the defendant.

Testimony for the defendant: The house has not yet been finished according to the contract. The job was very poor work, was unskillfully and carelessly done in many respects; none of it was done properly, except the shingling of the roof. There were defects in the brick work in not putting in two brick pillars under one of the sleepers of the house where it was unsupported by the chimneys, which plaintiff refused to put in, and defendant placed them at an expense of $1.50. The chimneys, instead of being 4 feet wide, were made wider, thereby making a misfit for the mantles. The brick pillars under the front veranda were not uniformly located and did not make a neat job. The window-frames were not put in line with each other, some higher and some lower, and not equal distance from the door or center of house in the rear side. The veranda posts in front were irregularly placed, no two of them being the same distance apart. Defendant exhibited to the jury impressions he had taken in wax of about sixteen cracks in different parts of the house. They were from over one inch to one eighth of an inch in size. There was a crack next to a door-frame one and one eighth inches wide, and another four fifths of an inch wide. There were three or four cracks over the water-tables one half inch wide, above window frames on the outside;

also three or four other cracks on outside between weatherboarding and windows and door-frames, from one eighth to one fourth inch in size; also three or four cracks in open joints of one fourth inch at the joints of the molding on base-plank inside the house. There were defects in the fitting of the doors, window-sash and frames of both, leaving variations from one fourth to three fourths of an inch from the rule for such work. There were also defects in the flooring, all of which was new lumber. Defendant used all diligence and effort to facilitate and aid the plaintiff in doing the work well and with the least possible delay; he authorized and directed plaintiff to get all lumber and material that he needed at any lumber yard in town; and no delay was caused by defendant on this account. All material should be good and was good, except some pieces put in by the carelessness of some of the workmen. Plaintiff locked plasterers out at one time, and refused to do his work, and demanded payment of the balance to be due upon completion of the work, and refused to do the work until this balance was paid him. To make the job complete and such a good, plain, neat job as the contract called for, would require an outlay from $150 to $200. A good and neat job could be done in tearing down and rebuilding an old house; and it was not necessary for the plastering to be done in a house before the mantels, base-boards and molding were put up. The defendant testified that he did not make the statements testified to by the plaintiff and another witness, in reference to his being satisfied with the work; that the job was not completed according to the agreement, and he was not satisfied with it, and never said so; that at the time stated there was other unfinished work; fastenings to windows, repairing a sash, and shelves to be put in closets, which work plaintiff did, and defendant did not get possession of the house until the 6th of August,

1890. Most of the material in the house was new; he instructed plaintiff to use none but the best material either of the old or the new. Before the suit was brought, defendant did telephone to plaintiff's counsel that the sash-locks and transom-lights and closet-shelves remained to be done, and that when these things were done, and everything else there might remain to do which he could not think of then, he would settle.

W. T. POOL, *pro se.*

F. D. PEABODY, by brief, *contra.*